IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| HOWARD FLOREY INSTITUTE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:07cv778 (LO/TRJ) |
| | ) | |
| JONATHAN W. DUDAS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the Court are Cross Motions for Summary Judgment with supporting Memoranda (Dkt. nos. 37-38, 41-43), the Oppositions (Dkt. nos. 47, 48), the Replies (Dkt. nos. 49, 50) and Supplemental Memoranda requested by the Court (Dkt. nos. 53, 54). Plaintiffs Howard Florey Institute, *et al.*, brought this action against Jonathan W. Dudas in his capacity as Under Secretary of Commerce and Director of the United States Patent and Trademark Office seeking judicial review of a final agency action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* Plaintiffs claim that the actions taken by the United States Patent and Trademark Office in denying their Petitions seeking a waiver of 37 C.F.R. § 1.10 pursuant to 37 C.F.R. § 1.183 was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and should be set aside under 5 U.S.C. § 706(2)(A). Upon careful consideration of the parties' briefs and oral argument, and for the reasons stated in this Memorandum Opinion, the Court reluctantly finds that the decision of the United States Patent and Trademark Office must be affirmed and that the defendant is entitled to summary judgment in his favor.

I.    **Factual Background**

The material facts underlying this Administrative Procedure Act dispute are contained in

the Administrative Record that was filed with the Court (Dkt. no. 7) and are undisputed.[1]

Plaintiffs are the Howard Florey Institute, Baker Medical Research Institute, Chrishan Samuel,

Ross Bathgate, Geoffrey Tregear, and Xiao-Jun Du (collectively "HFI"). (Complaint ¶¶ 2-7).

Defendant is Jonathan W. Dudas, named in his official capacity as the Under Secretary of

Commerce and Director of the United States Patent and Trademark Office ("USPTO").

(Complaint ¶ 8).

After business hours on May 19, 2005, an attorney at the law firm of Townsend

and Townsend and Crew LLP ("the Firm") received an e-mail from HFI's Australian counsel

with instructions to file the patent application that was attached to the e-mail on Friday, May 20,

2005. (AR 70, 79-80). On the morning of May 20, 2005, the attorney at the Firm acknowledged

receipt of HFI's e-mail. (AR 70, 77-78). In accordance with HFI's instructions, the application

was prepared following the Firm's standard procedures and dispatched by courier on the same

day to the U.S. Post Office for Express Mail delivery to the USPTO. (AR 70, 83-86).

On May 20, 2005, the Firm's courier, Mr. R,[2] left the Firm's Walnut Creek office

at 5:55 p.m. with the patent application sealed in an Express Mail envelope. (AR 72, 205-6).

Mr. R walked the two blocks from the Firm's office to board a Bay Area Rapid Transit

("BART") train at the Walnut Creek BART station to head to the MacArthur BART station in

---

[1]References to the Administrative Record are noted as "AR" followed by the page number.

[2]The Firm's courier was referred to as "Mr. R" in the Administrative Record to "respect his privacy". (AR 70).

Oakland, California, which is the closest BART stop to the Main Post Office in West Oakland

(AR 154, 205-6). On the day in question, Mr. R's job responsibilities included delivering patent

applications to the U.S. Post Office and depositing them for Express Mail delivery to the

USPTO. (AR 205). This branch of the Post Office was open until midnight on that day, and this

fact was known by Mr. R. (AR 154).

   After boarding the BART train, Mr. R inadvertently fell asleep, and he awoke just as the

conductor announced his stop. (AR 206). Mr. R. became distracted and left the train while

leaving behind the patent application and his personal bag containing his wallet, car and house

keys, and cell phone. (AR 206). Mr. R immediately notified a clerk at the BART station that the

bag with his belongings had been left on the train. (AR 206). The clerk called the next stations

on the route to alert them of the situation and advised Mr. R that nothing could be done unless

the bag was turned in and if it was turned in, a BART representative would notify him. (AR

206). Mr. R's Declaration indicates that he became overwhelmed with confusion, disorientation

and panic since he no longer had his car or house keys, his cell phone and he had no cash or

additional value on his BART train ticket. (AR 206). He states that he walked for miles from

one BART station to the next in the hopes that his bag had been found and turned into a station

agent. (AR 206). Mr. R then walked to the home of a friend who had a spare key to Mr. R's

house. (AR 206). Mr. R's friend arrived home at approximately 11:45 p.m. and gave Mr. R the

spare key and drove Mr. R to his house. (AR 206). Mr. R arrived home after midnight and

discovered a voice message from a BART clerk stating that his bag had been recovered, and it

would be available at the lost and found booth at the BART terminal. (AR 206-7). Mr. R

regained possession of his bag with the patent application and Express Mail materials around

3

7:30 a.m. on Saturday, May 21, 2005. (AR 206-7). Mr. R then contacted the attorney at the Firm and advised him that the package of documents containing the subject application had been lost on the way to the Post Office the night before. (AR 207). Mr. R then returned the documents to the attorney at the Firm. (AR 207).

The attorney at the Firm met Mr. R at the Firm's office on the morning of May 21, 2005. (AR 71). The application documents were then re-dated and delivered to the U.S. Post Office for Express Mail delivery to the USPTO approximately one hour after the U.S. Post Office opened for business on Saturday, May 21, 2005. (AR 71). The patent application (Application No. 11/133,763) received a filing date of May 21, 2005 by the USPTO. (AR 1-64).

On June 22, 2005, a psychological evaluation was performed on Mr. R by Jules Burstein, Ph.D., a clinical and forensic psychologist. (AR 153). Mr. R was interviewed and underwent three psychological tests. (AR 153). Dr. Burstein diagnosed Mr. R. with having suffered an acute panic attack on May 20, 2005. (AR 157-8). The DSM-IV-TR (Diagnostic and Statistical Manual of Mental Disorders-Text Revised, page 432) criteria for the clinical condition of "acute panic attack" requires the presence of four or more of thirteen distinct symptoms. (AR 157). Dr. Burstein concluded that Mr. R satisfied at least nine of the thirteen symptoms, which included pounding heart, sweating, shortness of breath, chest pain or discomfort, nausea or abdominal distress, dizzy, lightheaded, or faint, fear of losing control or going crazy, and hot flushes in the face. (AR 157). Dr. Burstein opined that the acute panic attack clouded Mr. R's consciousness and impaired his thinking and reasoning. (AR 157). Dr. Burstein also indicated that the extraordinary level of distress which eventually became a full-fledged panic attack prevented Mr. R from considering the option of calling on the Firm's attorneys during the evening of May 20,

4

2005, so the documents could be reprinted, signed and delivered to the U.S. Post Office by midnight, thereby guaranteeing that they were mailed within the specified deadline. (AR 158).

### A.    HFI's First Petition for Waiver of Rules Under 37 C.F.R. § 1.183

On October 31, 2005, HFI filed a Petition for Waiver of Rules Under 37 C.F.R. § 1.183, requesting a waiver of Rule 37 C.F.R. § 1.10 in order that Application No. 11/133,763 be accorded a filing date of May 20, 2005 ("First Petition"). (AR 69-158). In support of the First Petition, HFI submitted six exhibits: Exhibit A was the email correspondence dated May 19 and 20, 2005, between HFI's Australian counsel and the Firm (AR 77-82); Exhibit B was a Declaration by R. Gwen Peterson describing the Firm's established procedure for filing documents with the USPTO by Express Mail under 37 C.F.R. §1.10 that was in effect on May 20, 2005 (AR 83-84); Exhibit C was a Declaration by Judith Cotham stating that the Firm's standard procedure for effecting the filing of documents under 37 C.F.R. §1.10 was adhered to without deviation for the subject application and that once the subject application had been dispatched to the U.S. Post Office for delivery, a facsimile was sent to HFI's Australian counsel indicating the subject application had been filed (AR 85-87); Exhibit D was the facsimile sent by the Firm to HFI's Australian counsel at 6:00 p.m. on May 20, 2005, indicating the application had been filed with the USPTO (AR 87); Exhibit E was a copy of the Express Mail materials and application that was provided to Mr. R for delivery to the U.S. Post Office on May 20, 2005 (AR 88-151); and Exhibit F was a report dated July 5, 2005, from Jules Burstein, Ph.D. concerning his evaluation of Mr. R on June 22, 2005. (AR 152-58).

In the First Petition, HFI argued that extraordinary circumstances evolved after HFI's attorneys first dispatched the application on May 20, 2005, resulting in an unavoidable delay in

5

filing and that equity mandated that the subject application be afforded a filing date of May 20, 2005. (AR 69). As set forth in the First Petition, the subject application was received by the Firm on the morning of May 20, 2005; prepared in accordance with the Firm's standard procedures for filing with the USPTO by Express Mail delivery in accordance with 37 C.F.R. § 1.10; given to a Firm employee for delivery to the U.S. Post Office; the courier fell asleep while riding the BART train to the U.S. Post Office; the courier exited the train without his personal belongings including the subject application; the courier then suffered an acute panic attack that precluded him from employing any rational means for ensuring that the subject application was filed timely; the subject application was retrieved by the courier from the lost and found the following morning; and the courier then contacted an attorney at the Firm who immediately re-dated the subject application and had it mailed to the USPTO by Express Mail during the morning of May 21, 2005. (AR 70-72).

HFI cited the case of *Sturzinger v. Commissioner of Patents*, 377 F. Supp. 1284 (D.D.C. 1974) in support of the argument that the extraordinary circumstances set forth above justified a waiver of Rule 37 C.F.R. § 1.10 and that the subject application should be afforded its intended filing date of May 20, 2005. (AR 73-74). In the alternative, HFI argued that the facsimile sent to HFI's Australian counsel on May 20, 2005 (Exhibit D to the First Petition, AR 87) should be acknowledged as the "date-in" in lieu of the Express Mail label since it is proof that the subject application was intended to be filed on May 20, 2005. (AR 75).

On November 18, 2005, the USPTO issued its Decision dismissing the First Petition Under 37 C.F.R. § 1.183. The USPTO stated in its Decision that in order to submit a "grantable" petition under 37 C.F.R. § 1.183, the "Petitioner must show (1) that this is an extraordinary

6

situation where (2) justice requires waiver of the rule" citing *In re Sivertz*, 227 U.S.P.Q. 255 (Com'r Pat. 1985). (AR 162). The USPTO found that "Petitioner has not established that either condition exists in this case." (AR 162). The USPTO based its dismissal on the premise that the courier was an agent of the Petitioner; that the Petitioner was responsible for the actions of the courier; that the courier failed to exercise reasonable care and diligence; that there is nothing extraordinary about a courier falling asleep on a train and leaving his belonging on the train; and that the USPTO did not cause or contribute to the delay. (AR 162-63). The USPTO also noted that the Petition did not contain a statement from Mr. R or an individual with firsthand knowledge of the underlying events. (AR 159).

The USPTO stated that the decision in *Sturzinger* was distinguishable because in that case the application was stolen while in the custody of the U.S. Postal Service, and there was no indication that the applicant was culpable for the theft. (AR 164-65). The USPTO also stated that *Sturzinger* did not provide any support for the application of an "intended" filing date since the court found that the filing date should be the date the "proposed application" was delivered to the USPTO and not the date when the original application was mailed to the USPTO. (AR 164-66).

The USPTO concluded its Decision by finding that even if there was an extraordinary situation such that justice required a waiver of 37 C.F.R. § 1.10(a)(1), the request to waive or suspend the requirements of a statute pursuant to 37 C.F.R. § 1.183 is beyond the discretion or the authority of the USPTO. (AR 166).

7

**B.     HFI's Renewed Petition for Waiver of Rules Under 37 C.F.R. § 1.183**

On January 17, 2006, HFI filed a Renewed Petition for Waiver of Rules Under 37 C.F.R.

§ 1.183 with the USPTO, again requesting a waiver of Rule 37 C.F.R. § 1.10 in order that the

subject application be accorded a filing date of May 20, 2005.  (AR 200-209).  To address the

concerns raised in the initial Decision that no statement was provided from an individual with

firsthand knowledge of the underlying events, HFI provided a Declaration from Mr. R detailing

the events that occurred on May 20 and 21, 2005, relating to the subject application.  (AR 205-

207).  In response to the portion of the Decision finding that Mr. R's falling asleep did not rise to

the level of an extraordinary circumstance, HFI argued that the extraordinary situation occurred

*after* Mr. R departed the train without his belongings, including the subject application.  (AR

202).  HFI asserted that the "extraordinary situation" occurred when Mr. R suffered an acute

panic attack, thereby clouding Mr. R's mind and judgment and preventing him from employing

any rational means for ensuring the subject application was filed timely.  (AR 203).

On March 3, 2006, the USPTO dismissed the Renewed Petition.  (AR 211-16).  That

Decision stated that it was still not clear what alternative course of action Mr. R could have

undertaken absent the acute panic attack and that equitable relief was not justified since it was

the actions of Petitioner's agent and not the USPTO which caused the delay in filing.  (AR 214).

The Decision also stated that the Renewed Petition did not address the earlier finding that the

*Sturzinger* decision was more in line with the USPTO's reasoning to dismiss the Petition and that

the request to treat the facsimile sent to HFI's Australian counsel on May 20, 2005, as the

functional equivalent of a "date-in" on a U.S. Postal Service Express Mail label would require

the USPTO to waive "a Law."  (AR 215).

8

C.    **HFI's Second Renewed Petition for Waiver of Rules Under 37 C.F.R. § 1.183**

HFI filed a Second Renewed Petition for Waiver of Rules Under 37 C.F.R. § 1.183 with

the USPTO on August 2, 2006. (AR 219-33). The Second Renewed Petition addressed the four

points raised by the USPTO in the March 3, 2006 dismissal. (AR 221-22).

HFI responded to the USPTO's inquiry concerning what other responses or activities Mr.

R could have taken in order to secure the recovery or timely filing of the subject application if he

had not had an acute panic attack. (AR 223-25). As set forth in the Second Renewed Petition, a

reasonable person in control of his or her faculties would have attempted to contact the Firm to

ask for help and instruction. (AR 223). If Mr. R had contacted the Firm or one of its attorneys at

home soon after he departed the BART train, there was ample time to have the subject

application reprinted and delivered to the U.S. Post Office for Express Mail delivery before the

midnight deadline. (AR 224). In addition, Mr. R could have waited at the MacArthur BART

station (where he reported the missing items to a BART agent and that BART agent made calls to

the next stations on the route) to see if there was any response to the inquiries to the other BART

stations concerning the lost bag. (AR 224-25).

HFI argued that Mr. R's acute panic attack constituted an extraordinary situation where

justice requires a extraordinary remedy. (AR 225). HFI distinguished Mr. R's situation from

those relied upon by the USPTO involving ignorance of USPTO rules or an accident caused by a

party's inadvertent failure to comply. (AR 225-26). Absent the acute panic attack, Mr. R could

have taken reasonable, rationale steps to ensure that the subject application was reprinted and that

reprinted version was delivered to the U.S. Post Office for delivery by Express Mail before the

midnight deadline. (AR 226). HFI also contends that since the lost bag was recovered that

9

evening by BART personnel, if Mr. R had remained at the BART station he may have been able to retrieve his lost bag in time to deliver the subject application to the U.S. Post Office. (AR 226).

The Second Renewed Petition discussed the facts underlying the *Sturzinger* decision and the ultimate decision to award the plaintiff a filing date for a "proposed application" that failed to meet the statutory requirements for a patent application. (AR 226-28). As set forth in the Second Renewed Petition, at the time the *Sturzinger* application was mailed to the USPTO in 1971, there was no provision allowing a filing date other than when a proper application was delivered to the USPTO. (AR 227). In *Sturzinger* the court allowed a filing date that predated the applicant's actual compliance with the statutory filing requirements. *Sturzinger*, 377 F. Supp. at 1286. (AR 228).

HFI advanced the position that the language in 35 U.S.C. § 21(a) "but for postal service interruptions or emergencies" does not rule out the possibility that other exigencies such as a medical emergency could be an emergency designated by the Director.[3] HFI also argued that the stated goals of 37 C.F.R. § 1.10 were satisfied in that on May 20, 2005, the subject application was in the physical custody of a governmental agency (BART) with no interest in the subject application. (AR 229-30). HFI noted that the USPTO had not taken the position that the application that was deemed filed on May 21, 2005, was any different than the application that was lost on May 20, 2005, recovered by BART personnel and then returned to Mr. R. (AR 230-31).

---

[3]On March 17, 2008, the Court entered an Order finding that the language in 35 U.S.C. § 21(a) applies specifically to Postal Service emergencies and is not applicable to the facts presently before the Court. (Dkt. no. 52).

On January 19, 2007, the Second Renewed Petition was denied by the USPTO. (AR 235-44). In that Decision, the USPTO questions whether Mr. R could have reached anyone at the Firm by phone since it was after business hours on a Friday or whether he could have contacted any of the Firm's lawyers at home. (AR 238). The USPTO also took issue with the argument that Mr. R may have been able to retrieve the lost application before the midnight deadline if he had waited at the BART station since it is unclear when during that evening Mr. R's belongings were located. (AR 238). The decision reiterates the earlier position that had Mr. R remained awake and not left his bag on the train, the application would have been filed in a timely manner. According to the USPTO, the "but for" cause of the missed filing deadline was the inattentiveness of Mr. R and not the acute panic attack that followed. (AR 240-41). The USPTO's final Decision also found that HFI's arguments that the USPTO has the authority to waive the filing requirements in 37 C.F.R. § 1.10 were unavailing. (AR 243).

### D.   HFI's Complaint

On March 19, 2007, HFI filed a Complaint in the United States District Court for the District of Columbia under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, seeking judicial review of a final agency action, namely the USPTO's decision to deny the Petition under 37 C.F.R. § 1.183 that 37 C.F.R. § 1.10 be waived to provide HFI with a filing date which precedes the date on which the application was mailed by one day. (Complaint ¶ 1, Dkt. no. 1). HFI claims that the Decision of the USPTO is a final agency action for which there is no other adequate remedy and is subject to judicial review pursuant to 5 U.S.C. § 704. (Complaint ¶ 27, Dkt. no. 1). HFI asserts that the Decision to deny the Petition was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and should be set aside under 5 U.S.C. §

11

706(2)(A).  (Complaint ¶ 26, Dkt. no. 1).  On July 10, 2007, the case was transferred to this

Court following the filing of a motion to transfer.  (Dkt. no. 4).

On August 17, 2007, the USPTO filed its Answer to the Complaint.  (Dkt. no. 6).  The

Administrative Record was filed with the Court on August 22, 2007.  (Dkt. no. 7).  As set forth

in an Order entered on January 10, 2008, the parties agreed to a briefing schedule for Motions for

Summary Judgment and to have those motions heard on March 7, 2008.  (Dkt. no. 36).  The

parties filed their Motions for Summary Judgment, Memoranda in Support, Oppositions and

Replies.  (Dkt. nos. 38, 40, 41, 42, 43, 47, 48, 49 and 50).  The Court heard oral argument on the

Motions for Summary Judgment on March 7, 2008, and they were taken under advisement.  (Dkt.

no. 51).  On March 17, 2008, the Court entered an Order finding that the language in 35 U.S.C. §

21(a) applies specifically to Postal Service emergencies and is not applicable to the facts

presently before the Court and requested supplemental briefing.  (Dkt. no. 52).  The parties filed

Supplemental Briefs on March 21, 2008.  (Dkt. nos. 53, 54).

## II.     Statutes and Regulations at Issue

### A.     37 C.F.R. § 1.183 – Suspension of Rules

In an extraordinary situation, when justice requires, any requirement of the
regulations in this part which is not a requirement of the statutes may be
suspended or waived by the Director or the Director's designee, *sua sponte*, or on
petition of the interested party, subject to such other requirements as may be
imposed.  Any petition under this section must be accompanied by the petition fee
set forth in § 1.17(f).

### B.     37 C.F.R. § 1.10 – Filing of correspondence by "Express Mail"

(a)(1)  Any correspondence received by the U.S. Patent and Trademark Office
(USPTO) that was delivered by the "Express Mail Post Office to Addressee"
service of the United States Postal Service (USPS) will be considered filed with

the USPTO on the date of deposit with the USPS.

(2) The date of deposit with USPS is shown by the "date in" on the "Express Mail" label or other official USPS notation. If the USPS deposit date cannot be determined, the correspondence will be accorded the USPTO receipt date as the filing date. See § 1.6(a).

**C.     35 U.S.C. § 21(a) – Filing date and day for taking action**

The Director may by rule prescribe that any paper or fee required to be filed in the Patent and Trademark Office will be considered filed in the Office on the date on which it was deposited with the United States Postal Service or would have been deposited with the United States Postal Service but for postal service interruptions or emergencies designated by the Director.

**D.     35 U.S.C. § 111(a) – Application in general**

(1) Written application. An application for patent shall be made, or authorized to be made, by the inventor, except as otherwise provided in this title, in writing to the Director.

(2) Contents. Such application shall include--

> (A) a specification as prescribed by section 112 of this title;

> (B) a drawing as prescribed by section 113 of this title; and

> (C) an oath by the applicant as prescribed by section 115 of this title.

(3) Fee and oath. The application must be accompanied by the fee required by law. The fee and oath may be submitted after the specification and any required drawing are submitted, within such period and under such conditions, including the payment of a surcharge, as may be prescribed by the Director.

(4) Failure to submit. Upon failure to submit the fee and oath within such prescribed period, the application shall be regarded as abandoned, unless it is shown to the satisfaction of the Director that the delay in submitting the fee and oath was unavoidable or unintentional. The filing date of an application shall be the date on which the specification and any required drawing are received in the Patent and Trademark Office.

**III.     Jurisdiction and Venue**

This Court has jurisdiction pursuant to 5 U.S.C. § 702 and 28 U.S.C. §§ 1338(a) and

1361. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 703.

13

## IV.    Standard of Review

Under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), a reviewing Court shall

hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law. *Citizens to Preserve*

*Overton Park v. Volpe*, 401 U.S. 402, 413-15 (1971). Summary judgment is appropriate when

"there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). The focal point for the review of a claim under the

Administrative Procedure Act such as this one is the Administrative Record. *Camp v. Pitts*, 411

U.S. 138, 142 (1973).

## V.    Discussion

The Cross Motions for Summary Judgment raise two issues that must be decided by the

Court. The first issue is whether the USPTO's decision to deny the Petition for a waiver of 37

C.F.R. § 1.10 pursuant to 37 C.F.R. § 1.183 was arbitrary, capricious, an abuse of discretion or

otherwise not in accordance with law and should be set aside pursuant to 5 U.S.C. § 706(2)(A).

The second issue is whether the USPTO has the ability under 37 C.F.R. § 1.183 to waive the

requirements contained in 37 C.F.R. § 1.10. After a full review of the Administrative Record,

the pleadings submitted by the parties and the argument presented by counsel, the Court finds

that the USPTO's decision that HFI failed to establish that this was an extraordinary situation

where justice requires waiver of a rule was arbitrary, capricious, an abuse of discretion and

otherwise not in accordance with law. However, the Court finds that the USPTO does not have

the authority under 37 C.F.R. § 1.183 to provide HFI with a filing date of May 20, 2005.

14

Accordingly, the USPTO's Motion for Summary Judgment will be granted and the USPTO's decision is hereby affirmed.

## A.   The USPTO's Decision under 37 C.F.R. § 1.183

All parties agree that under 37 C.F.R. § 1.183 a petitioner must establish (1) that there was an extraordinary situation where (2) justice requires waiver of the rules. *See* 37 C.F.R.   §

1.183; *In re Sivertz,* 227 U.S.P.Q. 255 (Com'r Pat. 1985); *In re Bachler*, 229 U.S.P.Q. 553

(Com'r Pat. 1986). As recently stated by the Federal Circuit in *Burandt v. Dudas*, 2008 U.S.

App. LEXIS 12328, at \*7 (Fed. Cir. June 10, 2008):

> The APA provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."
>
> 5 U.S.C. § 706(2)(A). Under an arbitrary and capricious standard, the scope of review is narrow and a court may not "substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983). A court reviewing the agency decision "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974) (quotations omitted). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Star Fruits v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

HFI argues that the USPTO disregarded the clear and undisputed evidence in the

Administrative Record that Mr. R suffered an acute panic attack after leaving his bag on the

BART train; that the panic attack prevented Mr. R from acting in a manner in which a rational

person would have acted under the circumstances; and that if Mr. R had not suffered a panic

attack, steps could have been taken to ensure the timely filing of the application. HFI contends

15

that the USPTO improperly focused on the events leading up to the panic attack (Mr. R falling

asleep on the train and exiting the train without his bag) and ignored the fact that if Mr. R had

acted in a rational manner once he left the train without his belongings, the application could

have been filed in a timely manner.  HFI states that the evidence before the USPTO established

that "but for" the acute panic, the application would have been filed in a timely manner.

There is no dispute concerning the evidence that was before the USPTO as shown in the

Administrative Record.  The Administrative Record clearly shows that as a result of Mr. R falling

asleep on a BART train and leaving his bag on the train at some point soon after 5:55 p.m. on

May 20, 2005, he suffered an acute panic attack.  The evidence in the Administrative Record also

establishes that if Mr. R had not suffered an acute panic attack, there was sufficient time for

corrective action to be taken so that the application could have been filed in a timely manner.

The USPTO's unrealistic and unsupported view that Mr. R would not be able to contact anyone

at the Firm after 6:00 p.m. to inform them of the mishap and to take corrective action was not

supported by the evidence in the Administrative Record and was contrary to the evidence

presented by HFI including the sending of a facsimile to HFI's Australian counsel by a secretary

at the Firm after the close of normal business hours (AR 85-87) and Mr. R contacting a Firm

attorney at home early the following morning (AR 207, 155, 71).

Unfortunately the USPTO's Decision focuses on the events leading up to the time when

Mr. R left his bag on the BART train and ignored the importance of the intervening acute panic

attack.  The USPTO's Decision improperly characterizes the situation as an "inadvertent failure to

comply with the requirements" and states that the cause of the failure to file in a timely manner

was the "inattentiveness" of Mr. R by falling asleep and leaving this bag on the train.  Based on

16

that faulty premise, the USPTO found there was nothing extraordinary about a courier falling asleep and leaving his belongings on the train. (AR 163). However, the Administrative Record reveals that the application could have been filed in a timely manner if Mr. R had not suffered an acute panic attack and the failure to consider that evidence was an abuse of discretion. Accordingly, the Court finds that an acute panic attack such as the one suffered by Mr. R is an "extraordinary situation" as set forth in 37 C.F.R. § 1.183 and that the USPTO's finding that there was no "extraordinary situation" was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law.

The next issue is whether justice requires the waiver or suspension of a requirement in the regulations given that the panic attack was an extraordinary situation. The USPTO found that equitable powers should not be invoked to excuse the performance of a condition by a party that has not acted with reasonable due care and diligence. In support of that finding the USPTO stated that Mr. R was an agent of the petitioner, and it was the actions of the "agent, and not the PTO, which caused the delay in filing". The evidence in the Administrative Record does not support any finding that the Firm did not act with reasonable due care and diligence in having Mr. R (a longtime employee of the Firm) deliver the application to the U.S. Post Office for mailing by Express Mail. The evidence shows that the Firm maintained adequate procedures for filing documents with the USPTO by Express Mail (AR 83-84); that those procedures were followed in preparing the subject application (AR 85-86); and but for the unfortunate set of events that began when Mr. R exited the train without his belongings and culminated in his suffering an acute panic attack, the application would have been filed in a timely manner pursuant to 37 C.F.R. § 1.10.

17

The evidence in the Administrative Record does not support a finding that the circumstances in this case constituted an inadvertent failure to comply with the rules, an unawareness of the applicable rules or an avoidable oversight. While the conduct preceding the acute panic attack may not rise to the level of due care and diligence, it was the acute panic attack that was the ultimate cause of the delay in the filing of the application. Under these circumstances, the Court finds that justice does require the waiver of the rule in this case.

B.      The USPTO's Authority Under 37 C.F.R. § 1.183

The more difficult issue in this case is whether the USPTO has the authority to grant the relief requested in the Petition. While the USPTO addressed the substance of the Petition in each of its Decisions and found that the petitioner did not establish either requirement under 37 C.F.R. § 1.183 – an extraordinary situation where justice requires waiver of the rule – it also provided as an alternative reason for denial that the granting of the Petition would require the waiver of a requirement of a statute.[4]  The relevant language of 37 C.F.R. § 1.183 provides "any requirement of the regulations in this part *that is not a requirement of the statutes* may be suspended or waived". The USPTO takes the position that Congress has mandated when a patent application is to be considered filed the USPTO and that the USPTO has no authority to waive or suspend

---

[4]"[A] simple but fundamental rule of administrative law[, known as the *Chenery* doctrine,] is. . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). In other words, a court may only affirm an agency action on the grounds articulated by the agency itself. *See id.* In the present case, the USPTO articulated their decisions based on several different grounds, one of which was that the USPTO could not waive a statutory requirement. Accordingly, the Court finds that the inability of the USPTO to waive a statutory requirement was sufficiently articulated by the USPTO in the Administrative Record so as to comport with the dictates of the *Chenery* doctrine, not withstanding petitioners arguments to the contrary.

those requirements. *See* 35 U.S.C. § 111(a) (the date on which the specification and any required drawing are received in the Patent and Trademark Office); 35 U.S.C. § 21(a) (the date on which it was deposited with the United States Postal Service).

The Court previously ruled that the provision "but for postal service interruptions or emergencies designated by the Director"contained in 35 U.S.C. § 21(a) applies specifically to Postal Service emergencies and is not applicable to the facts presented in this case. Additional briefing was provided to the Court concerning the question of whether the provisions in 35 U.S.C. § 111 (a)(4) applies to the facts before the Court. Based on the Supplemental Memoranda submitted by the parties, the Court is persuaded that the USPTO does not have the authority to waive or suspend the statutory provisions regarding when a patent application is deemed filed with the USPTO.

The language in 37 C.F.R. §1.183 allowing for the suspension or waiver of regulations expressly excludes "a requirement of the statutes". Cases decided under 37 C.F.R. §1.183 have recognized that statutory requirements cannot be waived pursuant to 37 C.F.R. §1.183. In *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed.Cir. 1998), the Federal Circuit recognized that statutory requirements such as those contained in 35 U.S.C. §§ 111 and 112 cannot be waived or suspended under 37 C.F.R. §1.183. *In re Bachler*, 229 U.S.P.Q. 553 (Com'r Pat.1986), the Commissioner granted the request for reconsideration since the subject request did not involve the timely filing of papers governed by statute but rather a brief required only by the USPTO rules. If the situation had involved papers required by statute, no relief could have been granted

19


since the papers had not been timely filed.[5]

    HFI relies too heavily on the decision in in *Sturzinger*, 377 F. Supp. 1284 (D.D.C. 1974). In that case the Court allowed the applicant the filing date on which a duplicate set of papers (albeit not the originals) was delivered to the USPTO after the original set had been stolen while in the possession of the U.S. Postal Service. The date that was allowed was the date on which the duplicate set of papers was actually *delivered* to the USPTO, and an original set of those papers was subsequently provided to the USPTO. While the decision in *Sturzinger* does support HFI's arguments that a court can require the USPTO to waive some requirements relating to the filing

---

[5]In August 1982, Congress passed 35 U.S.C. § 21(a) which expressly delegated the USPTO authority to promulgate binding regulations to implement the provisions of the statute for filing dates. *See* H.R. REP., 1982 U.S.C.C.A.N. 765, 775. On October 27, 1982, the USPTO proposed regulations which construe the statutory language to require an interruption or emergency affecting the U.S. Postal Service. *See* Revision of Patent Procedure, 47 Fed. Reg. 47744, 47744 (Oct. 27, 1982). After the notice-and-comment period, the USPTO formally promulgated the regulations in January 1983. *See* Revision of Patent Procedure, 48 Fed. Reg. 2696, 2696 (Jan. 20, 1983). The USPTO *Manual of Patent Examining Procedure* also explains that in the event of a postal interruption or emergency, the USPTO will place a notice on the USPTO website. *Manual of Patent Examining Procedure*, Chapter 511, *available at* http://www.uspto.gov/web/offices/pac/mpep/mpep_e8r5_0500.pdf.
One such recent example of a U.S. Postal Service emergency was the closure or non-acceptance of mail in post offices throughout southern California from October 22, 2007, through October 25, 2007, as a result of the wildfires.
http://www.uspto.gov/web/offices/pac/dapp/opla/preognotice/wildfire_termination.pdf.
    The USPTO has clearly construed § 21(a) to require a postal interruption or emergency, such as a natural disaster, or other similar event which prevents people from accessing the U.S. Post Office. In *Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984) the Supreme Court held that if a statute administered by an agency "is silent or ambiguous with respect to" an issue, the reviewing court should accord weight to the agency's interpretation instead of "impos[ing] its own construction on the statute. *Chevron*, 467 U.S. at 843. The USPTO determined that 35 U.S.C. § 21(a) precluded them from considering exigent circumstances, other than those that are U.S. Postal Service interruptions or emergencies, for when a patent application is deemed filed with the USPTO. Applying the requisite *Chevron* deference to the USPTO's interpretation, as this Court is bound to do, the Court declines to substitute it's own judgment for that of the USPTO.

20

of applications, in that case the waiver related not to the delivery date of the application but more to the requirement of original documents being submitted instead of duplicates. There was no question that an application and supporting papers were actually delivered to the USPTO on the date allowed by the court.

The harsh result reached in this Memorandum Opinion is mandated by the language of the applicable statutes and the limitations contained in 37 C.F.R. §1.183, and the fact that no Executive Branch agency may act in derogation of a federal statute. *See A.F. Stoddard & Co. v. Dann*, 564 F.2d 556 (D.C. Cir. 1977).

**VI.   Conclusion**

For the reasons stated above, summary judgment in favor of the defendant is hereby granted.

Entered this 7th day of July, 2008.

                                        Liam O'Grady
                                        _____
                                        Liam O'Grady
                                        United States District Judge

Alexandria, Virginia